**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re: | NOT FOR PUBLICATION |
| --- | --- |
| GISELE BOUILLETTE ALLARD, *a/k/a* GISELE ALLARD, | Chapter 7 |
| | Case No. 18-14092 (MG) |
| Debtor. | |

**MEMORANDUM OPINION APPROVING THE SALES AT AUCTION OF TWO PROPERTIES OWNED BY THE DEBTOR**

Alan Nisselson ("Trustee"), Trustee for the chapter 7 estate of Gisele Bouillette Allard, a/k/a Gisele Allard ("Debtor"), seeks approval and confirmation of the sale of two parcels of real property. Each of the properties is owned by a corporation wholly-owned by the Debtor, and therefore the stock of the two companies is property of the estate, now controlled by the Trustee. The properties are located at 32 West 120th Street and 239 Lenox Avenue (the "Properties"). (Trustee's Report and Request, ECF Doc. # 78.) The Trustee requests that the Court enter an Order approving the sales. ("Proposed Order," ECF Doc. # 78-2.) The Trustee's Report and Request is supported by an Affidavit from Richard B. Maltz, the CEO of Maltz Auctions Inc., the Trustee's auctioneer, which was admitted in evidence at the sale hearing on September 19, 2019. ("Maltz Affidavit," ECF Doc. # 78-1.) The Court previously entered an order authorizing the terms and conditions of the sale. ("Order," ECF Doc. # 56.)

On September 18, 2019, the Debtor filed an objection to the sale. ("Objection," ECF Doc. # 81.) In response, 50 East 126th Street Realty LLC (the "Creditor") submitted a statement in support of the Trustee's Request for an order approving and confirming the sale of the Properties. ("Creditor's Statement," ECF Doc. # 82.)

For the reasons set forth below, the Objection is overruled, and the Report and Request is granted. While this matter is straightforward and, in normal circumstances, would not require a written opinion explaining the basis for the Court's ruling, because it seems likely that the

1

Debtor may appeal the order approving these sales, the Court explains its reasoning in this Opinion. The Trustee has requested that the Court waive the 14-day stay provided in Bankruptcy Rule 6004(h), but that relief is denied in light of the Objection and insufficient grounds requiring that the sales close earlier.

## BACKGROUND

### A. General

The Debtor filed a voluntary chapter 11 petition on December 19, 2018. ("Petition," ECF Doc. # 1.) The case was converted to a case under chapter 7 by an Order dated May 7, 2019. (ECF Doc. # 32.) In Debtor's schedules of assets and liabilities, Debtor listed total assets of $11,475,210.22, including personal property and real estate. ("Schedule A/B," ECF Doc. # 14.) She also listed $5,567,474.91 in secured claims and $134.00 in unsecured claims. (*Id*.)

On May 31, 2019, Debtor disclosed that she owns a 100% unencumbered interest in the Properties, through the two corporations she owns—32 West 120th Street, Inc. and 239 Lenox Ave, Inc. ("Amended Schedule A/B," ECF Doc. # 39 at 4.) The Debtor's schedules listed the values of 32 West 120th Street and 239 Lenox Avenue as $2,824,500 and $3,000,000 respectively. (*Id*.) These values are not supported by any recent appraisals. Based on the schedules and the Trustee's representations, the Properties do not appear to have any liens on them. ("Sale Motion," Doc. # 44 ¶ 10.)

### B. The Sale Procedures Order and Terms of Sale

On May 29, 2019, the Trustee filed an application and requested an order for the retention and employment of Maltz as real estate broker and auctioneer for the Trustee. ("Maltz Application," ECF Doc. # 38.) On June 6, 2019 the Court authorized Maltz's retention and employment. ("Maltz Retention Order," ECF Doc. # 41.)

2

On June 20, 2019, the Trustee filed a motion for the entry of a Sale Procedures Order: (a) authorizing the Trustee to sell at public auction, either together or as a lot, the Properties; (b) approving proposed Terms and Conditions of Sale for each of the Properties; (c) authorizing the payment of a break-up fee and overbid protection for potential qualified stalking horse bidders; (d) setting dates for the auction and sale approval hearing, and approving the form and manner of notice; and (e) granting other related relief. (Sale Motion, ECF Doc. # 44.) The Trustee included as Exhibit B to the Motion the Terms and Conditions of Sale. ("Terms and Conditions of Sale," ECF Doc. # 44-3.)

On July 15, 2019, the Court held a hearing ("Sale Procedures Hearing") and granted the Motion. A day later, the Court entered a Sale Procedures Order authorizing the Trustee to conduct an auction on September 12, 2019 at 11:00 a.m. at New York LaGuardia Airport Marriott Hotel. ("Sale Procedures Order," ECF Doc. # 56 at 4.) The Order also directed the Trustee to inform all prospective bidders of his determinations of the highest or best bids for the Properties at the Auction. (*Id.* at 4–5.) On July 17, 2019, the Trustee filed an affidavit of service demonstrating that it had served a Notice of Auction on all creditors and parties in interest, and prospective purchasers. ("Notice of Auction," ECF Doc. # 57-1.)

**C. The Auction**

Maltz stated in his Affidavit that the auction was mass marketed and publicized by numerous methods, including posting online, sending weekly emails, and physically mailing brochures to targeted recipients. (Maltz Affidavit ¶ 4.) During the September 19 sale hearing, the Trustee testified on direct and cross-examination and identified specifically the extensive newspaper and internet advertising by Maltz of the proposed auction sale of the Properties. The auction complied with the Sale Procedures Order and was held on September 12, 2019. (*Id.* ¶ 5.) All qualified bidders signed and acknowledged the Terms and Conditions of Sale, previously

3

approved by the Court's Sale Procedures Order. (*Id.*)

With respect to the 120th Street Property, Maltz registered 28 qualified competitive bidders to participate in the public auction sale. (*Id.* ¶ 6.) The initial bid was $1 million. (*Id.*) After a competitive bidding process, the Trustee selected First Equities, Inc. as having made the highest or best bid for a total purchase price of $2,782,500, which includes a 6% buyer's premium in the amount of $157,500. (*Id.*) First Equities, Inc. signed and acknowledged the Terms and Conditions of Sale, executed and delivered to the Trustee a Memorandum of Sale as a successful purchaser for the 120th Street Property, and made a qualifying deposit in the amount of $100,000. (*Id.*) First Equities, Inc. also made the additional required deposit of $320,000, so that the total good faith deposit is equal to 10% of the high bid plus the 6% buyer's premium. (Trustee's Report and Request ¶ 6.)

With respect to the Lenox Property, Maltz registered 22 qualified bidders to participate in the public auction sale. (*Id.* ¶ 7.) The initial bid was $400,000. (*Id.*) After a competitive bidding process, the Trustee selected First Equities, Inc. as having made the highest or best bid for a total purchase price of $2,729,500, which included a 6% buyer's premium in the amount of $154,500. (*Id.*) First Equities, Inc. signed and acknowledged the Terms and Conditions of Sale, executed and delivered to the Trustee a Memorandum of Sale as a successful purchaser for the 120th Street Property, and made a qualifying deposit in the amount of $100,000. (*Id.*) However, at the September 19 sale hearing, the Trustee advised that First Equities, Inc. did not make the additional required deposit and determined not to proceed with the purchase of the Lenox Property. Therefore, the Trustee also advised that he determined to proceed with the sale to the second highest bidder—Jagdeep Deol—for a total purchase price of $2,713,600, which included a 6% buyer's premium in the amount of $153,600, and that Jagdeep Deol made the required deposit of $409,000. *See* Trustee's Supplemental Report and Request for Order Approving and

Confirming Trustee's Auction Sale of Two Parcels of Improved Real Estate at ¶ 3 (ECF Doc. # 83).

The Trustee recommends that the Court approve the offers made by First Equities, Inc. as the highest or best bid on 120th Street Property for a total purchase price of $2,782,500, and by Jagdeep Deol as the highest or best bid on the Lenox Property for a total purchase price of $2,713,600. (*Id.* ¶ 9.)

### D. The Objection

On September 18, 2019, Debtor filed an Objection. (Objection, ECF Doc. # 81.) The Objection states that "both sales were made at grossly depreciated prices, negligently dropping due diligence in the fiduciary duty to protect the value of the estate vis-à-vis the debt secured by those values." (*Id.* ¶ 2.) Moreover, the Objection alleges that the Trustee previously "predicted that the properties being liquidated herein would fetch a market value of over $12 million dollars," but instead "[t]he sales have brought approximately half of that." (*Id.* ¶ 8.)

The Debtor also argues that the New York Supreme Court unlawfully and illegally inflated the amount of debt owed to the Creditor from $700,000 to $7 million by compounding interest at 25% per year. (*Id.* ¶¶ 3, 5.) Debtor argues that these interest rates conflict with the Referee's Report prohibiting compounding interest. (*Id.* ¶ 7.)

In response to the Objection, the Creditor submitted a statement supporting the Trustee's sale of the Properties. (Creditor's Statement, ECF Doc. # 82.) The Creditor holds a claim based on a judgment of foreclosure and sale for a different property held on August 21, 2019.[1] (*Id.* ¶ 2.) The sale proceeds from the earlier sale that secured the Creditor's claim resulted in a substantial unsecured deficiency; therefore, it now seeks to recover an unsecured deficiency

---

[1] On March 19, 2019, the Court entered an order lifting the automatic stay, permitting the Creditor to complete state court foreclosure against one of the Debtor's properties, located at 50 East 126th Street, New York, NY. (ECF Doc. # 22.) The foreclosure sale was held on August 21, 2019. There were multiple bids beginning at $100,000. The Creditor purchased the property with a credit bid of $1,220,000. (ECF Doc. # 70.)

5

amount of $5,900,547.68. (*Id.*) Debtor moved to vacate the judgment of foreclosure and sale by arguing to the state court that it improperly awarded compound interest instead of simple interest. (*Id.* ¶ 3.) The Supreme Court issued a decision foreclosing Debtor from relitigating these issues.[2] (*Id.*) Since no distributions will be made at this time by the Trustee from the sales proceeds, whether the Creditor can recover the full amount of its claim is not an issue for this Court on the pending application to approve the sales.

## LEGAL STANDARD

### A. Sale of Debtor's Assets Under Section 363(b)

"The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In approving a transaction conducted pursuant to section 363(b)(1), courts consider whether the debtor (or trustee) exercised sound business judgment. *See Official Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 144-45 (2d Cir. 1992) (approving sale of assets based on a finding that sound business judgment supported sale because delay in the sale of assets may diminish their value); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071-72 (2d Cir. 1983) (holding that the sale of assets out of the ordinary course of business must be supported by "some articulated business

---

[2] The Creditor has stated that it intends to seek (but has not yet filed papers) for a deficiency judgment, but no deficiency judgment has yet been entered. While the Creditor filed a claim in the chapter 7 case, including the amount of the alleged deficiency, the Trustee has not yet examined the claims. The Debtor intends to oppose the entry of the deficiency judgement in state court, arguing that under applicable state law, the Creditor's recovery is limited to the value of its secured claim, with no deficiency. The Debtor has tried unsuccessfully several times to get this Court and the state court to modify the state court foreclosure judgment, reducing the interest award. *See* Decision and Order, *50 East 126th Street Realty LLC v. Allard*, Index No. 109284/2005, N.Y. Sup. Ct., N.Y. Cty., at 3 (Sept. 5, 2019) ("The fact is that this court cannot review decisions made by the judge previously assigned to the case; that is the province of an appellate court. Justice McMahon awarded the plaintiff a judgment and the interest rate sought by plaintiff; if Allard did not agree with that decision, then her remedy was to pursue an appeal and to file a motion to reargue (which she did but was unsuccessful). Allard cannot seek to relitigate issues that were already decided at this late stage of the litigation—in fact, the property was already sold at a foreclosure auction.") (ECF Doc. # 82, Ex. 1.) But the Rooker-Feldman doctrine does not permit this Court to do so. The Rooker–Feldman doctrine derives its name from two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

justification, other than appeasement of major creditors" and that "a judge determining a § 363(b) application [must] expressly find from the evidence presented before him at the hearing a good business reason to grant such an application"). Once the Trustee articulates a sound business justification, there "is a presumption that in making a business decision the [decision maker] acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc (In re Integrated Res. Inc.),* 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (citation omitted).

A determination that there are sufficient business reasons to justify a particular sale depends on the facts and circumstances of each particular case. *See In re Lionel Corp.,* 722 F.2d at 1071-72. However, in a chapter 11 case, courts should consider factors such as: (1) the proportionate value of the asset to the estate as a whole, (2) the amount of time elapsed since the filing, (3) the likelihood of proposing and confirming a reorganization plan in the near future, (4) the effect of the proposed sale on any reorganization, (5) the sale price to be obtained with reference to any appraisals of the property, (6) alternative uses of the property, and (7) whether the asset is increasing or decreasing in value. *Id.* at 1071. Of course, in a chapter 7 case, such as this one, the trustee is charged with the duty of promptly collecting and liquidating the debtor's property, and then distributing the proceeds of the estate according to established statutory priorities.

### B. Sale of Assets Free and Clear of Liens Under Section 363(f)

Section 363(f) of the Bankruptcy Code provides that a sale free and clear of liens may be approved only if at least one of the following conditions are met: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the

7

aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled to accept a monetary satisfaction of such interest. *See* 11 U.S.C. § 363(f). A trustee or debtor in possession may sell property of the estate free and clear of all liens "if any of the five conditions of § 363(f) are met." *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988). Here, there are no secured claims limiting the Trustee's ability to sell the Properties.

### C. Protections to Good Faith Purchasers Under Section 363(m)

Section 363(m) of the Bankruptcy Code states that "[t]he reversal or modification on an appeal or an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal." 11 U.S.C. § 363(m). The "[g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings. . . . A purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Licensing by Paolo, Inc. v. Sinatra (In re Gucci),* 126 F.3d 380, 390 (2d Cir. 1997) (citations omitted).

### D. Relief from Fourteen-Day Automatic Stay Under Bankruptcy Rule 6004(h)

Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). This rule is intended to provide time for an objecting party to appeal the Sale Order before it is implemented. *See* Advisory Committee Notes to FED. R. BANKR. P. 6004(g). Collier suggests that eliminating the 14-day stay period depends on whether the "there is a sufficient business need to close the transaction within the 14-

8

day period and the interests of the objecting party, taking into account the likelihood of success on appeal, are sufficiently protected." 10 COLLIER ON BANKRUPTCY § 6004.11 (16th ed. 2019). Moreover, "[i]f the objecting party informs the court that it intends to appeal and seek a stay, the stay period should not be reduced to less than an amount of time sufficient to allow the objecting party to seek a stay, unless the court determines that the need to proceed sooner outweighs the objecting party's interests." *Id.*

## DISCUSSION

### A. The Trustee's Business Judgment

In approving the Sale Procedures Order, the Court already determined that the Trustee's proposed sales of these two Properties reflected an appropriate exercise of business judgment. Now that the auction has taken place with very active competitive bidding for both Properties, the only issue is whether, in light of the conduct of the auction and the resulting bids, the Trustee has exercised appropriate business judgment in recommending that the resulting proposed sales be approved. The answer is clearly yes.

The Debtor's assets were substantially comprised, directly or through wholly-owned corporations, of ownership of five parcels of developed real property. The Properties sold in the auction were not encumbered by any liens and could be efficiently liquidated through a public auction. The liquidation of the Properties was necessary to maximize the value of the Debtor's estate. The auctions were fair, with active competitive bidding. The Trustee has demonstrated a compelling and sound business judgment for selling the property and for approval of the two sales at issue in this matter.

The Trustee exercised sound business judgment in the selection of the highest or best offers pursuant to the Terms and Conditions of the Sale. The 120th Street Property, valued at $2,824,000 in the Debtor's schedules, sold for $2,625,000. The Lenox Property, valued at

9

$3,000,000 in the Debtor's schedules, sold to the second highest bidder for $2,713,600. After over 20 competitive bidders made their bids, the offers for both Properties were the highest or best offers at the auction.

In *In re Borders Grp., Inc.*, this Court found that:

> [T]he trustee or DIP is entitled to great judicial deference in deciding which bid to accept as the best and highest bid on the sale of the Debtor's assets; and although the trustee's or DIP's discretion is not without limit, the Court should not step in and assume a role and responsibility properly placed by the Code in another's hands.

453 B.R. 477, 4883 (Bankr. S.D.N.Y. 2016) (citing *In re Castre, Inc.*, 312 B.R. 426, 430–31 (Bankr. D. Colo. 2004)).

Therefore, while the actual amounts obtained from the auction differ modestly from the values listed in the Debtor's schedules (which were not supported by current appraisals), the Trustee determined both bids were the highest or best. The Trustee's decision to accept these bids is entitled to substantial deference. The results of competitive bidding at the auction provide the best evidence of the value of these Properties.

### B. Sale of Assets Under Section 363(f) and Good Faith Purchasers Under Section 363(m)

The free and clear requirements of 363(f) have been met. The listed schedules did not disclose any liens on the Properties themselves. The sales of the Properties will result in a distribution to unsecured creditors and perhaps a surplus to the Debtor. The sales may properly be made free and clear of any liens under section 363(f).

Additionally, First Equities, Inc. qualifies as a good faith purchaser of the 120th Street Property pursuant to section 363(m). Jagdeep Deol qualifies as a good faith purchaser of the Lenox Property pursuant to section 363(m). There is no evidence of fraud or collusion between the Trustee, auctioneer, and purchasers before, during, or after the sales process. The bidding pool was also comprised of 28 bidders for the 120th Street Property and 22 bidders for the Lenox

Property.  The auction was widely publicized.  The sale process complied with the Sale Procedures Order.  Therefore, First Equities, Inc. and Jagdeep Deol each qualify as a good faith purchaser.

### C. The Debtor's Objection

Debtor's Objection is overruled.  First, any objection relating to the computation of interest included in the state court judgment of foreclosure is not relevant to whether the sale should be approved.  This Court does not have authority to change the state court judgment; that issue that has already been litigated to a final judgment in state court.  Second, the sale was conducted in an appropriate manner.  The Debtor provides no support for her assertion that the Trustee predicted that the Properties would sell for over $12 million.  The Trustee testified at the sale hearing and denied providing any prediction to the Debtor about the prices that could be achieved at auction.  What matters, in any event, is the value the market placed on the Properties at the competitive auction.

### D. Relief from Fourteen-Day Automatic Stay Under Bankruptcy Rule 6004(h)

Bankruptcy Rule 6004(h) provides that an order authorizing the sale is stayed for 14-days after the entry of the order approving the sale unless the Court orders otherwise.  Because the Debtor objected to the sale, and may well appeal the order approving the sale, the Court concludes that the stay should not be waived in this case.  Circumstances warranting doing so include the Debtor's precarious financial and business position necessitating an immediate closing.  Those circumstances are absent here.  *See* 10 COLLIER ON BANKRUPTCY § 6004.11; *see also In re L.A. Dodgers LLC,* 468 B.R. 652, 662 (Bankr. D. Del. 2011) (waiving the 14-day stay where "Debtors [were] operating within a small time frame").

## **CONCLUSION**

For the reasons explained above, the Trustee's Report and Request is **GRANTED**. A separate Order approving the sales will be entered.

Dated:   September 20, 2019
         New York, New York

                                   ___*Martin Glenn*_____
                                   MARTIN GLENN
                                   United States Bankruptcy Judge