**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
In re:                                                                                              NOT FOR PUBLICATION

    GISELE BOUILLETTE ALLARD,                                           Chapter 7
    *a/k/a* GISELE ALLARD,
                                                                                                            Case No. 18-14092 (MG)

                                        Debtor.
------------------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER APPROVING
## SETTLEMENT AGREEMENT AND OVERRULING CLAIM OBJECTION

*A P P E A R A N C E S:*

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Chapter 7 Trustee*
156 West 56th Street
New York, NY 10019
    By:    Leslie Barr, Esq.

ANNE ROSENBACH, ESQ., PLLC
*Attorney for Gisele Bouillette Allard, Debtor*
3 Delta Road
Massapequa, NY 11758
    By:    Anne Rosenbach, Esq.

OFFIT KURMAN, P.A.
*Attorneys for Creditor 50 East 126th Street Realty LLC*
590 Madison Avenue, 6th Floor
New York, NY 10022
    By:    Albena Petrakov, Esq.
            Umar A. Sheikh, Esq.

OFFICE OF THE UNITED STATES TRUSTEE
33 Whitehall Street
21st Floor
New York, NY 10004
    By:    Greg M. Zipes, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion of Alan Nisselson (the "Trustee"), in his capacity as chapter 7 trustee of the estate of Gisele Bouillette Allard (the "Debtor"), for entry of an order approving a stipulation (the "Stipulation") between the Trustee and 50 East 126th Street Realty, LLC ("126 Realty"), to resolve treatment of 126 Realty's claim ("Claim No. 3," Claim # 3-1) and to authorize the Trustee to expend estate funds to procure insurance policies. ("Motion," ECF Doc. # 168.) The Trustee has attached a declaration in support of the Motion. ("Trustee Decl.," ECF Doc. # 168-3.) The Debtor filed an objection to the Motion. ("9019 Objection," ECF Doc. # 173.) 126 Realty submitted a statement in support of the 9019 Motion. ("126 Realty Statement," ECF Doc. # 175.) The 126 Realty Statement is supported by the declaration of Umar A. Sheikh. ("Sheikh Decl.," ECF Doc. # 176.) The Trustee also filed a reply to the 9019 Objection. ("Reply," ECF Doc. # 177.) On June 7, 2021, the Court held a hearing on the Motion (the "Hearing"). On June 10, 2021, a transcript of the Hearing was filed. ("Transcript," ECF Doc. # 181.)

Also pending before the Court is the Debtor's objection to Claim No. 3. ("Claim Objection," ECF Doc. # 172.) A hearing on the Claim Objection has been scheduled for July 7, 2021; however, as the Court concludes that the Claim Objection lacks merit, for the reasons explained below in connection with the Court's discussion of the Motion, the Claim Objection is **OVERRULED**, and the hearing cancelled.

The 9019 Objection and the Claim Objection both rest on the Debtor's contention that a scrivener's error in a judgment of foreclosure and sale order by New York State Supreme Court Justice Judith N. McMahon, dated September 28, 2018, became the basis for a claim in excess of

$5 million ($5,255,638.91),[1] where—the Debtor contends—the claim amount should have been entered as $525,538.91. ("JFS Order," ECF Doc. # 176-1 at 11–17.) In essence, the Debtor argues that the amount of "$5,255,38.91"—the sum which is in fact expressly included in the JFS Order—should be interpreted to mean $525,538.91 rather than $5,255,638.91.[2] This argument is easily refuted, however, because the $5,255,638.91 amount (1) appears later in the JFS Order, (2) equals the correct mathematical result when applying 25% compound interest to the $94,677.16 principal for 19 years, and (3) is included in the Debtor's own schedules.

Alas, this is not the first time the Debtor has objected to the amount awarded to 126 Realty by the State Court. The Debtor has made several unsuccessful attempts to overturn this judgment, seeking to have the state trial court reconsider its decision, as well as seeking to appeal the trial court decision. The Court recognizes the substantial difference between the original principal amount of Debtor's debt—$100,00—and the staggering amount she now owes—in excess of $7 million. As detailed below, the bankruptcy court may not review the State Court's decision. Therefore, the Debtor's objections to the Motion and to Claim No. 3 must fail.

Accordingly, for the reasons discussed below, the Court **GRANTS** the Motion and **OVERRULES** the 9019 Objection and the Claim Objection.

### I.    BACKGROUND

#### A.    The Bankruptcy Case

On December 19, 2018, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. ("Petition," ECF Doc. # 1.) On January 21, 2019, the Debtor filed her

---

[1]    As interest has continued to accrue in the more than two and a half years since entry of the JFS Order, the total amount of Claim No. 3 has now grown to $7,120,547.68. (*See* Claim No. 3 at 5.)

[2]    At the Hearing, the Debtor's counsel admitted that the Debtor's sole argument is that the "$5,255,38.91" amount should be $525,538.91 rather than $5,255,638.91. (Transcript at 10:18–23.)

3

schedules (the "Schedules," ECF Doc. # 14), which list 126 Realty as having a claim for $5,255,638.91, supported by collateral having a value of $1,400,000.00. (*Id.* at 11.) The collateral that supports the claim is the apartment building located at 50 East 126th Street, New York, New York 10035 (the "Property"). On April 18, 2019, 126 Realty filed a proof of claim for $7,120.547.68. (Claim No. 3.) Attached to Claim No. 3 is a description of interest and cost calculation, showing interest added to the claim of $5,255,638.91, first at a rate of 25% (compounded) per year until the entry of judgment of foreclosure and sale (the "Judgment") by the state trial court (the "State Court"), then at a post-judgment rate of 9% up until the filing of the Petition, for a total of $7,113,819.68. (*Id.* at 5.) The claim amount also includes sums of $1,428; $300; and $5,000 ordered pursuant to the Judgment, for the total of $7,120.547.68. (*Id.*)

On February 25, 2019, 126 Realty filed a motion for relief from the automatic stay to enforce its rights to the Property and to complete a foreclosure sale. ("Lift-Stay Motion," ECF Doc. # 18.) The Court granted the Lift-Stay Motion, modifying the stay so that 126 Realty could complete the pending foreclosure proceeding in the State Court. (ECF Doc. # 22.)

In addition to the Property, the Debtor owned other real property, including properties at 32 West 120th Street, New York, New York, 10027 (the "120th Street Property"); 134 West 119th Street, New York, New York 10029 (the "119th Street Property"); 239 Lenox Avenue, New York, New York 10027 (the "Lenox Ave Property") (*see* Lift-Stay Motion ¶ 6), as well as a property at 8201 Abbott Avenue, Miami Beach, Florida 33141 (the "Miami Property"). (Schedules at 3.) The Schedules list the Miami Property as securing a debt of $311,836.00 and having a collateral value of $880,822.00. (*Id.* at 11.)

On April 12, 2019, the Office of the United States Trustee (the "UST") filed a motion to convert the case to a case under chapter 7 of the Bankruptcy Code or, in the alternative, to

4

dismiss the case. (ECF Doc. # 24.) The Debtor, through her first attorney,[3] Steven Amshen, filed a cross-motion to dismiss the case rather than have it converted to a case under chapter 7. (ECF Doc. # 29.) On May 7, 2019, the Court entered an order converting the case to a case under chapter 7 (ECF Doc. # 32), and the Trustee was appointed. (ECF Doc. # 33.) Since his appointment, the Trustee has sold 120th Street Property and the Lenox Ave Property. (*See* Motion to Sell Property Free and Clear, ECF Doc. # 44; Memorandum Opinion Approving Sales at Auction of Two Properties Owned by the Debtor (the "Sale Order"), ECF Doc. # 84.) The 120th Street Property sold for $2,803,931.50; and the Lenox Ave Property sold for $2,713,600.00. (Sale Order at 4–5; Interim Trustee's Final Report, ECF Doc. # 112, at 4.) The Trustee currently holds $3,265,999.55, comprised of, *inter alia*, the net proceeds of those sales less Court-approved expenses and distributions. (Motion ¶ 10.)

### B. The Underlying State Proceedings Giving Rise to Claim No. 3

In 1998, the Debtor purchased the Property from Robert Robinson for $135,000, paying $35,000 at the time of purchase and executing a promissory note (the "Note") for the principal balance of $100,000. (Lift-Stay Motion ¶ 8.) The Debtor did not make any payments on the Note, and, in July 2005, 126 Realty's predecessor in interest (the "Estate"[4] or the "Plaintiff") commenced foreclosure proceedings in the State Court. (Sheikh Decl. ¶ 3.) The State Court granted summary judgment in favor of the Estate and appointed a referee[5] (the "Referee") to determine the amount due on the Note and the mortgage. (*Id.* ¶¶ 5–7.)

---

[3] The Debtor is currently on her fourth attorney. She has been represented in this case by Steven Amshen (Petroff Amshen LLP), Robert J. Gumenick, Joel Shafferman (Shafferman & Feldman, LLP), and Anne Rosenbach (Anne Rosenback, Esq., PLLC).

[4] After Mr. Robinson (the original seller) died, his estate commenced foreclosure proceedings with respect to the Property.

[5] The State Court actually appointed two referees; however, the first referee's determination of the amount due on the Note was rejected on the basis that the Debtor never received notice of the hearing before the first referee. The discussion that follows relates only to the second referee.

On August 1, 2009, the Referee issued a reasoned report (the "Referee Report," ECF Doc. # 18-4), finding the total due on the Note to be $329,272.62. (*Id.* at 21.) The Referee determined that the original amount of monthly payments on the Note should have been "$1,161.09, to repay the $100,000 loan amortized at 7% per annum over the ten year term." (*Id.* ¶ 10.) As the foreclosure proceeding was not commenced until after the applicable statute of limitations had already run with respect to the first several payments on the Note, the referring trial judge found that those payments should not be included in the principal amount. (*Id.* ¶ 11.) The Referee found the total principal amount less the time-barred payments to be $94,677.16. (*Id.* ¶ 12.) The Referee noted that the Plaintiff had sought an interest rate of 24.9% as this did not exceed the 25% maximum rate permitted by the criminal usury law. (*Id.* ¶ 15 (citing Penal Law § 190.42[6]).) The Debtor argued that she owed no principal or interest as the Note was usurious. (*Id.* ¶ 16.)

The Referee concluded that the Note was a purchase money mortgage and therefore not subject to civil usury restrictions, but still subject to criminal usury restrictions. (*Id.* ¶ 18.) Because the Referee found that the Note's default rate of 5% interest per *day* far exceeded the criminal usury restrictions of 25%, the Referee applied an interest rate of 24.9%. (*Id.* ¶ 22.) The Referee declined to apply compound interest as requested by the Plaintiff, finding that the Note did not expressly provide for compound interest. (*Id.* ¶¶ 23–25.) Accordingly, the Referee determined that 24.9% interest should apply from the first non-time-barred payment date (August 1, 1999) until entry of summary judgment in favor of the plaintiff (July 6, 2006), for a total principal and pre-judgment interest amount of $258,017.44. (*Id.* at 21.) The Referee then concluded that post-judgment interest should accrue on the principal at the statutory rate of 9%

---

[6] While the Referee Report actually cites to Penal Law § 190.24, this appears to be a typo, as it is Penal Law § 190.42 that sets forth the crime of criminal usury in the first degree.

from the date of judgment through the date of the Referee Report for a total of $329,272.62. (*Id.*)

For the next nine years the Plaintiff and the Debtor fought over the Referee Report.[7] On March 22, 2018, the Plaintiff filed a motion for an order modifying the Referee Report, confirming the Referee Report as modified; and awarding the Plaintiff a judgment of foreclosure and sale. ("Modification Motion," ECF Doc. # 176-4.) The Modification Motion appears to be the first instance where the amount of 126 Realty's claim ($5,255,638.91) that is listed in the Schedules appears. By the Modification Motion, the Plaintiff sought, *inter alia*, to clarify that the 2006 judgment was not a judgment of foreclosure (and thus the 9% post-judgment statutory rate should not have applied and should be replaced with the default rate); to set the default rate at 25%; and to fix the amount due on the Note at $5,255,638.91, as of July 1, 2017. (*Id.* ¶ 4.) Most notably, in a section with the heading "**$5,55,638.91** [sic] **DUE AS OF JULY 1, 2017 BASED ON 25% PER ANNUM DEFAULT INTEREST RATE**," the Plaintiff sets forth "calculations showing $5,25,638.91 [sic] is due as of July 1, 2017." (*Id.* at 19 & ¶ 43.) The Plaintiff sets out detailed calculations showing compound interest at 25% beginning July 1, 1999, and running to July 1, 2017, for a total of $5,255,638.91. (*Id.* ¶ 43.) Notwithstanding the Plaintiff's several typos in the Modification Motion, the calculations applying the 25% compound interest to the beginning principal balance of $94,677.19 do indeed yield an ending balance of $5,255,638.91 over the relevant time period. The Plaintiff acknowledged the "profound difference" between the original principal amount on the Note and the asserted amount in excess of $5 million but submitted that, as the Debtor "ignored her obligation for

---

[7]    The Modification Motion (defined below) notes that the Plaintiff made requests for modification of the Referee Report and for a new referee hearing in 2011, 2015, and 2017. (Modification Motion ¶ 10.)

nineteen [sic] while no doubt reaping the benefits, rents and profits of the property[,] [i]t is now time for the defendant to bear the consequences of their default." (*Id.* ¶ 44.) The Modification Motion stated in a parenthetical that interest should be compounded annually; it did not offer any argument why that modification of the Trustee Report was warranted.[8] (*See id.* ¶ 43 ("maximum interest rate being 25% per annum (25% compounded annually)").)

In the JFS Order dated September 4, 2018[9] (filed September 28, 2018), Justice Judith N. McMahon entered judgment in the amount set out in the Modification Motion: $5,255,638.91.[10] The State Court also awarded the three other sums ($1,428.00; $300.00; and $5,000.00) contained in Claim No. 3. (JFS Order at 14.) While the Sheikh Declaration characterizes the JFS Order as "detailed" (Sheikh Decl. ¶ 12), the JFS Order contains no reasoning or analysis why it adopted the calculation provided by the Plaintiff or why it modified the Referee Report to permit compound interest.

The Debtor made several unsuccessful attempts to overturn this judgment, seeking to have the trial court reconsider its decision, as well as making several unsuccessful attempts to appeal the decision. The Debtor filed an order to show cause in the State Court seeking to rescind the JFS Order. ("OSC," ECF Doc. # 176-5 at 2–13.) Justice McMahon denied the OSC on November 9, 2018, stating, in a handwritten note:

---

[8]     While the Sheikh Declaration characterizes this as a candid explanation that the Plaintiff's calculations are based on compound interest, reasonable minds may disagree as to the level of candor, particularly where the Plaintiff offers no substantive argument why the Referee's conclusion declining to apply compound interest should be ignored.

[9]     The date on the page bearing the judge's signature is September 14; however, later filings refer to the date of the JFS Order as September 4, 2018.

[10]    This number is represented at one point in the JFS Order as $5,255,83.91, and the Debtor has sought to argue in the 9019 Objection and the Claim Objection that this number, which is clearly a typographical error, was meant to be the true amount of the judgment. However, $5,255,638.91, appears later in the JFS Order, it is precisely the number contained in the Modification Motion, it is the correct mathematical result when applying 25% compound interest to the $94,677.16 principal for 19 years, and, finally, it is the number listed in the Debtor's Schedules.

> This order to show cause is denied after oral argument. This is a mortgage that goes back to 1998 and not one payment has been made since that date. This court finds no meritorious cause for vacating the default as all issues have been adjudicated in the last 13 years.

(*Id.* at 4.) On January 11, 2019, Justice McMahon denied another motion by the Debtor for an order to show cause. (ECF Doc. # 176-6.) On May 17, 2019, Justice Arlene P. Bluth denied the Debtor's motion for reargument as moot. (ECF Doc. # 176-7.) On September 9, 2019, Justice Bluth denied another attempt by the Debtor to correct the amount of the judgment set out in the JFS Order. (ECF Doc. # 176-9.) Justice Bluth acknowledged the Debtor's arguments about compound interest but noted that she was not able to

> review decisions made by the judge previously assigned to the case; that is the province of the appellate court. Justice McMahon awarded plaintiff a judgment and the interest rate sought by plaintiff; if Allard did not agree with that decision, then her remedy was to pursue an appeal and to file a motion to reargue (which she did but was unsuccessful).

(*Id.* at 13.) The Debtor also initiated several appeals, which she failed to perfect. (Sheikh Decl. ¶¶ 24, 30.) At the Hearing, the Debtor's counsel acknowledged that she reviewed the Debtor's various unperfected appeals, as well as the orders of Justices McMahon and Bluth referred to above. (Transcript at 10:24–13:22.)

## II.    LEGAL STANDARD

### A.    Proof of Claim

The filing of a timely proof of claim constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). To rebut the prima facie validity of a claim, an objecting party must "produce evidence equal in force to the prima facie case. The objector must produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case." *In re Residential Cap., LLC*, 501 B.R. 624, 641 (Bankr. S.D.N.Y.

9

2013). Only once the objector satisfies the burden of producing evidence sufficient to rebut the claimant's prima facie case does the burden "shift[] back to the claimant to produce additional evidence to prove the validity of the claim by a preponderance of the evidence." *Id.*

### B.    *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine is premised upon two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In a more recent decision explaining the *Rooker-Feldman* doctrine, the Supreme Court explained:

> The *Rooker–Feldman* doctrine takes its name from the only two cases in which we have applied this rule to find that a Federal District Court lacked jurisdiction. In *Rooker*, a party who had lost in the Indiana Supreme Court, and failed to obtain review in this Court, filed an action in Federal District Court challenging the constitutionality of the state-court judgment. We viewed the action as tantamount to an appeal of the Indiana Supreme Court decision, over which only this Court had jurisdiction, and said that the aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly. *Feldman*, decided 60 years later, concerned slightly different circumstances, with similar results. The plaintiffs there had been refused admission to the District of Columbia bar by the District of Columbia Court of Appeals, and sought review of these decisions in Federal District Court. Our decision held that to the extent plaintiffs challenged the Court of Appeals decisions themselves—as opposed to the bar admission rules promulgated nonjudicially by the Court of Appeals—their sole avenue of review was with this Court.

*Lance v. Dennis*, 546 U.S. 459, 463 (2006) (internal quotation marks and citations omitted).

The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system,

10

only the Supreme Court may review state-court decisions." *Hoblock v. Albany Cnty. Bd. Of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). The *Rooker-Feldman* doctrine applies to cases satisfying a four-part test: (1) the federal-court plaintiff lost in state court; (2) the plaintiff "must complain of injuries caused by a state-court judgment"; (3) the plaintiff "must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceeding commenced." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009).

### C. Res Judicata

Most attempts to relitigate an issue determined in a state case are properly analyzed under issue or claim preclusion principles rather than *Rooker-Feldman* because, in addition to the inherently limited scope of *Rooker-Feldman*, preclusion in federal court on the basis of a state court judgment is determined by state law, not federal law. As the Supreme Court has said, "[i]ncorporation of preclusion principles into *Rooker-Feldman* risks turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." *Lance*, 546 U.S. at 466; *see also id.* ("A more expansive *Rooker–Feldman* rule would tend to supplant Congress' mandate, under the Full Faith and Credit Act, 28 U.S.C. § 1738, that federal courts 'give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.' Congress has directed federal courts to look principally to *state* law in deciding what effect to give state-court judgments.") (internal citations omitted).

Res judicata, or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v.*

11

*McCurry*, 449 U.S. 90, 94 (1980)). "[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . ." *New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. § 1738). Furthermore, in the bankruptcy context, the court must also consider "whether an independent judgment in a separate proceeding would 'impair, destroy, challenge, or invalidate the enforceability or effectiveness' of the reorganization plan." *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 88 (2d Cir. 1997) (quoting *Sure-Snap Corp. v. State St. Bank & Tr. Co.*, 948 F.2d 869, 875–76 (2d Cir. 1991)). "In applying the doctrine of res judicata, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994); *see also Residential Cap.*, 501 B.R. at 635.

Under New York's doctrine of res judicata "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286–87 (2d Cir. 2002). "This doctrine also applies to defenses that could have been litigated, including defenses to a foreclosure." *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008). Although this doctrine requires "an identicality, or privity, of the plaintiffs and defendants in the initial and subsequent actions," this requirement "is not strictly imposed where the party against whom claim preclusion is sought has, in essence, already received his or her day in court, and the application of *res judicata* would not alter this conclusion." *Pharr v. Evergreen Garden, Inc.*, 123 F. App'x 420, 424 (2d Cir. 2005).

When the elements for res judicata are satisfied, bankruptcy courts may look behind a state court decision only where such judgment was obtained by fraud or collusion, or where the

12

state court lacked jurisdiction. *Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2d Cir. 1987). "'[F]raud in the procurement of a judgment' sufficient to warrant relief therefrom is properly identified with 'fraud on the court,' *i.e.*, 'fraud which is directed to the judicial machinery itself and is not fraud between the parties . . . .'" *In re Laing*, 945 F.2d 354, 358 (10th Cir. 1991) (quoting *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985) (en banc)) (denying reconsideration of state court judgment where alleged fraud "was not . . . *directed at* the *state court* that rendered [the] judgment" but instead "related to the events that made up the *subject matter* of the state court action"). *See Residential Cap.*, 501 B.R. at 636.

### D.     Rule 9019

Pursuant to Rule 9019 of the Bankruptcy Rules, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). Settlements are generally favored in bankruptcy because they "minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *In re MF Global, Inc.*, 2012 Bankr. LEXIS 3701, at *15 (Bankr. S.D.N.Y. 2012) (citing *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996)). Before approving a settlement, a bankruptcy court must determine that it "is fair and equitable and in the best interests of the estate." *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)) (internal quotation marks omitted).

In determining whether a proposed settlement is fair and equitable, courts in the Second Circuit have set forth the following interrelated factors (each an "*Iridium* Factor" or a "Factor," and, collectively, "*Iridium* Factors" or "Factors") to consider:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and

13

> protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

The court must "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (citation and internal quotation marks omitted). While "the court is not required to conduct a trial on the terms to approve a settlement . . . [,] the court must inform itself of 'all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated.'" *In re Kerner*, 599 B.R. 751, 755 (Bankr. S.D.N.Y. 2019) (quoting *O'Connell v. Packles (In re Hilsen)*, 404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009)).

"Although approval of a settlement rests in the Court's sound discretion, the debtor's business judgment should not be ignored." *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 75 (Bankr. S.D.N.Y. 2009) (citation omitted). In addition, the court "may give weight to the informed judgments of the trustee or debtor-in-possession and their counsel that a compromise is fair and equitable." *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

### III. DISCUSSION

The Court **GRANTS** the Motion to approve the settlement. The Stipulation is fair and equitable, within the range of reasonableness, and in the best interests of the Debtor's estate.

### A.  The Debtor Is Prevented from Challenging the State Court Orders in the Bankruptcy Court.

The Debtor argues that 126 Realty has overstated the amount of its claim. Claim No. 3 is an allowed claim based on a State Court judgment entered against the Debtor. A claim based on a state court judgment is entitled to full faith and credit, and a federal court may not look behind it. *See* 28 U.S.C. § 1738; *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 462–63 (1982) ("As one of its first acts, Congress directed that all United States courts afford the same full faith and credit to state court judgments that would apply in the State's own courts. Act of May 26, 1790, ch. 11, 1 Stat. 122, 28 U.S.C. § 1738.").

Similarly, the *Rooker-Feldman* doctrine prevents litigants from challenging state court orders in federal courts as a means of re-litigating matters that were considered and decided by a court of competent jurisdiction. Because the judgment underlying Claim No. 3 is entitled to full faith and credit, the Claim Objection and the 9019 Objection both fail.

Furthermore, even if this Court had jurisdiction to review the validity of the foreclosure judgment, the Debtor's arguments would be barred by res judicata. Because the Debtor was a party to the State Court foreclosure action, and because she could have raised these defenses in that action, she is barred from asserting them at this juncture. Additionally, no extrinsic fraud is alleged in the procurement of the foreclosure judgment.

15

> B.     **The Iridium Factors Weigh in Favor of Approving the Stipulation.**

An analysis of the *Iridium* Factors weighs in favor of approving the Stipulation.

1. <u>Balance Between the Litigation's Possibility of Success and the Settlement's Benefits; Likelihood of Complex and Protracted Litigation and Related Costs</u>

In the Motion, the Trustee submits that the first *Iridium* factor is not applicable because there is currently no litigation pending in this case before this Court. (Motion ¶ 27.) The Trustee also submits that the Stipulation will eliminate potential disputes concerning the allowance of 126 Realty's claim, including any deficiency judgment that 126 Realty might otherwise obtain from the State Court. (*Id.*)

Furthermore, the possibility of success in litigating the Claim Objection likely does not outweigh the benefits of the Stipulation. 126 Realty has argued that it has timely filed Claim No. 3 which evidences the validity and amount of its claim and that the Debtor has not produced any evidence rebutting the validity of the claim. Rather, the Debtor raises the same arguments as she did in the State Court. The *Rooker-Feldman* doctrine applies to bar the Debtor from relitigating the State Court issues in the Bankruptcy Court. Furthermore, on February 4, 2021, the Appellate Division denied the Debtor's motion to reinstate her appeal. (Index No. 109284/05, Motion No. 2020-038757.)

As to the second *Iridium* Factor, the Trustee contends that the potential disputes regarding the amount of 126 Realty's deficiency judgment could significantly delay the administration of the Estate and result in additional administrative expenses. (Motion ¶ 27.)

Accordingly, the first and second *Iridium* Factors weigh in favor of approving the Stipulation.

2. <u>The Interest of Creditors; Support of Other Parties in Interest; Sophistication of Counsel and Experience of the Court</u>

The Trustee represents that the "the approval of the Stipulation is in the best interest of creditors because it will enable the Trustee to immediately take steps to complete the administration of this case, and make a 100% distribution to all allowed administrative expenses and presently filed unsecured claims." (*Id.*) Although the Debtor has objected to the Stipulation, the Stipulation also benefits the Debtor by abandoning to her the RBC Advantage funds of $60,075.91, the Miami Property, and her homestead, the 119th Street Property, as well as preserving her right to receive a discharge from the Court. (*Id.*) Additionally, the Trustee states that the Stipulation was the product of good faith discussions between sophisticated and experienced counsel for the Parties. (*Id.* ¶ 22.)

Accordingly, the third, fourth, and fifth *Iridium* Factors weigh in favor of approving the Stipulation.

3. <u>Nature and Breadth of the Releases to be Obtained by Officers and Directors</u>

The sixth *Iridium* Factor does not appear to be relevant here. Accordingly, the Court gives it no weight.

4. <u>Arm's-Length Bargaining</u>

The Trustee represents that the Stipulation was the product of arm's length and good faith discussions between sophisticated and experienced counsel for the Parties. (*Id.* ¶ 22; *see also* Trustee Decl. ¶ 7.)

Accordingly, this Factor also weighs in favor of approving the Stipulation.

### IV.    CONCLUSION

The *Iridium* factors weigh heavily in favor of approving the Stipulation. For the reasons explained above, the 9019 Objection and the Claim Objection are **OVERRULED**, the Motion is

17

**GRANTED**, and the Court will enter an order, in the form of the proposed order attached to the Motion as Exhibit 2.

**IT IS SO ORDERED.**

Dated:   June 21, 2021
         New York, New York

                                            *Martin Glenn*
                                        _____
                                            MARTIN GLENN
                                    United States Bankruptcy Judge