Anne Rosenbach, Esq.
ANNE ROSENBACH, ESQ., PLLC
3 Delta Road
Massapequa, New York 11758
Tel.: (516) 795-7808
Attorney for Gisele Brouillette Allard, Debtor

UNITED STATES BANKRUPTCYCOURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In Re:

                                                                        Chapter 7

  GISELE BOUILLETTE ALLARD

                                                                       Case No.: 18-14092-mg

                         Debtor.
-----------------------------------------------------------X

**DEBTOR GISELE BROUITTELLE ALLARD MOTION PURSUANT TO
<u>11 U.S.C. § 329, FOR DISGORGEMENT.</u>**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

      GISELE BROUILLETTE ALLARD, the above captioned debtor ("Debtor"), brings this motion (the "Motion"), pursuant to Section 329(b) of the Bankruptcy Code, seeking an order directing Petroff Amshen, LLP ("Amshen") to disgorge to the Debtor, all of the funds that Amshen has received for services in this case. In support hereof, the Debtor respectfully states:

      1. Amshen bears a heavy burden to retain its fees. Even if Amshen's retention was approved by the Court, it would still have the burden of establishing entitlement to fees. As this

Court never approved Amshen's retention, Amshen is first required to receive this court's approval of its retention *nunc pro tunc* to December 19, 2018.

2. Moreover, Amshen's negligence throughout its representation of the Debtor precludes Amshen from being awarded its fees. Amshen (1) failed to provide proper pre-petition counseling  - the consultation was with a paralegal;  (2) filed the unauthorized individual petition and failed to correct the filling; (3) failed to properly prosecute the case, including its failure to file monthly operating reports; (4) failed to properly oppose the Motion to Convert[1] or even respond to  50 East 126th Street Realty, LLC's  "Opposition to Debtor's Cross-Motion For An Order Dismissing the Case."[2]

## BACKGROUND

3.   The Supreme Court for the State of New York entered a Default Judgment of Foreclosure and Sale ("Foreclosure") against 50 East 126th Street Inc ("Inc").

4. The Foreclosure was in the amount of   $5,255,638.91 on a $100,000 mortgage.

5. In order, to preserve Inc's right to appeal or otherwise address the $5,255,638.91 judgement and avoid foreclosure, Ms. Allard considered filing for bankruptcy protection for Inc.

6.  On December 18, 2018, at about 2:30 p.m., the receptionist at the Law Offices of Petroff Amshen, advised Ms. Allard to bring a certified check for $17,000.00 plus $1,717.00 for filing fees and scheduled an appointment for December 18, 2018 at 5:00 p.m.
**Ms. Allard never signed nor authorized the individual Petition prior to the filing.**

7. On December 18, 2018 at about 5:00 p.m., Ms. Allard visited Amshen, and after the payment of a $17,000.00 certified check and filing fees of $1,717.00, she was interviewed by

---

[1] All undefined terms shall have the meaning ascribed in previous pleadings or will be defined herein.
[2] Opposition Brief *to Debtor's Cross-Motion to Dismiss this Chapter 11 Case,* ECF #31, 05/03/2019.

2

Alex Konstantynovsky, a paralegal, and they decided that a chapter 11 bankruptcy of 50 East 126th Street Inc would be filed the next day before the foreclosure scheduled for December 19, 2018 at 2:00 p.m. Mr. Konstantynovsky asked her to provide the EIN for Inc. She did not have the EIN with her at that time and Mr. Konstantynovsky told her that this is not a problem and told her to provide the EIN by tomorrow morning. The next morning on December 19, 2018, when she called to provide the EIN, she was advised it was "too late" and that her personal bankruptcy had been filed.

8. Mr. Joel Meyers a friend of Ms. Allard, submitted a declaration[3] in support of Debtor's Motion To Amend Her Schedules A/B To Schedule and Compel Chapter 7 Trustee To Abandon Certain Property ("Motion to Compel") declared pursuant to 28 U.S.C. § 1746 that

> In order, to preserve her right to appeal or otherwise adverse judgement and avoid foreclosure, Ms. Allard considered filing for bankruptcy protection for 50 East 126th Street Inc.
> On December 18, 2018, at about 2:30 p.m., the receptionist at the Law Offices of Petroff Amshen, advised Ms. Allard to bring a certified check for $17,000.00 plus $1,717.00 for filing fees and scheduled an appointment for December 18, 2018 at 5:00 p.m.
> On December 18, 2018, at about 5:00 p.m., Ms. Allard visited Amshen, and after the payment of $17,000.00 certified check and filing fees of $1,717.00, she was interviewed by Alex Konstantynovsky, a 21-year-old Paralegal, and they decided that a chapter 11 bankruptcy of 50 East 126th Street Inc would be filed the next day before the foreclosure auction scheduled for December 19, 2018 at 2:00 p.m. I recall that at this meeting no documents of any nature or kind or a retainer was executed by Ms. Allard.
> The next day, Ms. Allard told me that when she called to provide the EIN for 50 East 126th Street Inc, she was advised by Alex Konstantynovsky it was "too late" and that her personal bankruptcy had been filed and she was now required to disclose all of her other assets.

---

[3] DECLARATION OF JOEL MEYERS IN SUPPORT OF DEBTOR'S MOTION TO AMEND HER SCHEDULES A/B TO SCHEDULE CERTAIN PROPERTY AND TO COMPEL CHAPTER 7 TRUSTEE TO ABANDON CERTAIN PROPERTY OF THE DEBTOR'S BANKRUPTCY ESTATE AND RELATED RELIEF, ECF #205, 01/07/2022.

**Ms. Allard never took a credit counseling prior or after her personal petition was filed.**

9. Ms. Allard submitted in support of the Motion to Compel that

> In addition, I took no credit counseling prior to this unauthorized filing or any time thereafter, although the credit counseling briefing certificate filed by Amshen shows that I completed my credit counseling from Abacus Credit Counseling, on December 19, 2018 at 7:29 a.m. (ECF Doc. 2).

**Amshen was negligent throughout its entire representation of the Debtor**

10. On March 19, 2019, the Court granted the Motion for Relief from Stay[4] ("Motion to Vacate") the automatic stay under section 362(a) of the Bankruptcy Code as to Assignee of Mortgage and Judgment of Foreclosure and Sale, 50 East 126th Street Realty LLC. Amshen, interposed no written response to the Motion to Vacate.

11. On April 12, 2019, the United States Trustee filed a Motion to Convert the Chapter 11 Case to Chapter 7, or in the alternative, Motion to Dismiss Case,[5] premised in part upon the Debtor's failures to respond to a motion to vacate the automatic stay concerning one of her properties and to deposit funds in U.S. Trustee's approved accounts.

12. Amshen failed to properly oppose the motion, but instead made a Cross Motion to the Dismiss Case. Notably, with the amount of equity in the estate, there was little likelihood of the case being dismissed.[6]

13. Amshen also failed to respond to the 50 East 126th Street LLC's Opposition Brief to Debtor's Cross-Motion to Dismiss this Chapter 11 Case. ECF # Doc 31, 05/03/2019.

---

[4] Order, signed on 3/19/2019, Modifying the Automatic Stay, ECF #22, 03/19/2019.

[5] ECF #24, 04/12/2019.

[6] Furthermore, the Debtor could have proposed a plan of reorganization under chapter 11. The Chapter 7 Trustee negotiated that the 126 Realty Claim was consensually reduced to $3,500,000.00. Further, the Chapter 7 Trustee liquidated over $6,754,709.22 worth of assets for approximately $5,677,473.54 with approximately $850,000.00. These substantial assets were may well have been sufficient to support a consensual chapter 11 plan.

14. As a result of Amshen's negligent inaction the Chapter 11 Case was converted to a Chapter 7 on May 7, 2019, and Alan Nisselson was appointed as Chapter 7 Trustee.

**The liquidation of practically all of Ms. Allard's assets.**

15. Amshen filing an individual bankruptcy placed all of Ms. Allard's assets and liabilities into the estate and included the debts owed to all of her creditors. If Inc filed for bankruptcy only the assets the Inc and its creditors would have been implicated. Either a bankruptcy filing by Ms. Allard, individually or the corporate for Inc would have stayed the Foreclosure and provided the opportunity to negotiate a settlement or otherwise address the Foreclosure.

16. The filing of a bankruptcy creates an estate. "Such estate is comprised of …. all legal or equitable interests of the debtor in property as of the commencement of the case…." 11 U.S.C. § 541.

17. Ms. Allard owned numerous properties that would have been outside of the bankruptcy estate and would have not been liquidated by the Trustee had Amshen filed for a corporate bankruptcy. When her case was converted to a chapter 7, the Chapter 7 Trustee liquidated substantial assets that were unrelated to the Foreclosure. These assets would have not been part of the bankruptcy estate had Amshen filed for a corporate bankruptcy,

| Examples of Assets Liquidated by Trustee which would not have been liquidated in Corporate Chapter 11.[7] | | |
|---|---|---|
| Asset | Value | Sale |
| Pharmacy Portfolio | $294,057.01 | $157,000.00 |

---

[7] See Trustees Final Report, ECF 202, 11/19/21.

5

| 32 West 120th Street, Inc | $2,824,500.00 | $2,803,931.50 |
| 239 Lenox Ave, Inc | $3,000,000.00 | $2,713,600.00 |

18. Finally, the costs associated with liquidation would not have occurred outside of bankruptcy and occurred as a result of Amshen's negligent filing. The Trustee and his professionals charged approximately $850,000.00. Moreover, the sale of the assets occurred as part of a liquidation and at times received extensively less than its actual value in a fire sale.[8]

**While Amshen Filed a Retention Order with the Court, it was never approved of by the Court nor did Amshen File an Application for Compensation**

19. On January 7, 2019 the Debtor made an Application (the "Application") seeking entry of an Order pursuant to Sections 328, 330, 331 and 1107(b) of Title 11 U.S.C. (the "Bankruptcy Code"), authorizing the employment and retention of Petroff Amshen LLP.

20. Pursuant to the Application:

> Subject to this Court's approval and in accordance with Sections 330 and 331 of the Bankruptcy Code, pursuant to the Bankruptcy Rules and Local Rules and other procedures that may be fixed by the Court, the Debtor requests that Petroff Amshen be compensated for the fees pursuant to the terms described herein and that Petroff Amshen receive reimbursement of actual and necessary expenses incurred in connection with the representation of the Debtor in this case.

Application, ¶ 13.

---

[8] Finally, the liquidation failed to maximize tax efficient sales and negotiate more favorable treatment. See DEBTOR GISELE BROUITTELLE ALLARD MOTION TO AMEND HER SCHEDULES A/B TO SCHEDULE CERTAIN PROPERTY AND TO COMPEL CHAPTER 7 TRUSTEE TO ABANDON CERTAIN PROPERTY OF THE DEBTOR'S BANKRUPTCY ESTATE AND RELATED RELIEF

21. In the Declaration of Steven Amshen, Esq., dated January 7, 2019 stated,

> Subject to the Court's approval in accordance with Sections 330 and 331 of the Bankruptcy Code, such Bankruptcy Rules as may be Applicable, the Local Rules and such other procedures as may be fixed by this Court, compensation will be payable pursuant to the terms of the retainer agreement, dated December 18, 2018.

Declaration, ¶ 6.

22. The proposed order states

> ORDERED, that, compensation and reimbursement of expenses paid to Petroff Amshen LLP, including any post-petition draw down of the pre-petition retainer, shall only be upon application to the Court and upon notice and an appropriate hearing, pursuant to 11 U.S.C. § 330 and 331, the Bankruptcy Rules, the Local Rules, the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, and the United States Trustee Fee Guidelines; …

23. Ultimately the Court never approved Amshen's retention and, as such, it is not surprising that Amshen failed to make an application to the Court pursuant to 11 U.S.C. § 330 and 331 for the "post-petition drawdown."

**The Chapter 7 Trustee Abandoned the Disgorgement Action to the Debtor.**

24. On January 7, 2022, the Debtor filed a Motion (ECF Doc. # 205) for an order (a) scheduling as an asset on Schedule A/B of the Debtor's bankruptcy schedules the verified complaint filed by the Debtor in the New York State Supreme Court, New York County, titled Gisele Brouillette Allard, Plaintiff, v. John P. DeMaio, Esq., Steven Amshen, Esq., Serge Felix Petroff, Esq., & Petroff Amshen, LLP ("Amshen," collectively the "Defendants"), Index No. 158217/2021, seeking to recover from Defendants for alleged legal malpractice (the "Malpractice Action"), and (b) compelling the Trustee to abandon, pursuant to 11 U.S.C. § 554(b) and Bankruptcy Rule 6007(b) (i) the Malpractice Action; (ii) the right to seek disgorgement from Amshen of the $17,000.00 retainer the Debtor paid to Amshen

("Disgorgement Action"); and (iii) any tax refund or credit ("Tax Refund") that may be due from taxes paid by the Trustee to the taxing authorities .

25. Alan Nisselson, as the Chapter 7 Trustee ("Chapter 7 Trustee"), and the Debtor, entered into a stipulation ("Stipulation") resolving in part some of the relief sought in the Motion. Pursuant to the Stipulation, Chapter 7 Trustee abandoned the Malpractice Action and the Disgorgement Action to the Debtor.

26. On February 7,2022, this Court "so ordered" the Stipulation. ECF# 210, 02/07/22.

### Section 329 of the Bankruptcy Code

27. Section 329 of the Bankruptcy Code "authorizes the Court to determine the reasonableness of compensation and the source of such compensation paid to the debtor's attorney for representing the interests of a debtor in connection with a bankruptcy case. . . ." *In re Glemaud,* No. 11-31697, 2013 WL 4498677, at *5 (Bankr. D.Conn. Aug. 21, 2013). Bankruptcy Rule 2016 implements Section 329 and requires that attorneys file a statement disclosing "the compensation paid or agreed to be paid . . . for services rendered or to be rendered . . . in connection with the case by such attorney, and the source of such compensation" within 14 days of the order for relief. Fed. R. Bankr. P. 2016(b). Section 329(b) provides that if "such compensation [paid or agreed to be paid by debtor to debtor's attorney] exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to . . . the entity that made such payment." 11 U.S.C. § 329(b); Fed. R. Bankr. P. 2017. "What constitutes reasonableness is a question of fact to be determined by the particular circumstances of each case. The requested compensation may be reduced if the court finds that the work done was excessive or of poor quality." 3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 329.04, at 329-14 (16th ed. 2013); *see*

*also In re Grant*, 14 B.R. 567, 569 (Bankr. S.D.N.Y. 1981) (in determining reasonableness the court should consider the "competence of the performance" and the "nature of the services."); *Lindo v.Figeroux and Assocs.* (*In re Lindo*), Case No. 10-10737 (SMB); Adv. Pro. No. 11-2755, 2013 WL 5188025, at *12 (Bankr. S.D.N.Y. Sep. 16, 2013) (court ordered disgorgement of retainer because attorney's legal services were rendered in such a negligent manner that they had no reasonable value).

28. Ultimately, it is for the court to decide whether or not the compensation is reasonable under Section 329(b). *Glemaud,* 2013 WL 4498677, at *5. Even in the absence of an objection, the Court has an independent duty to scrutinize the fee request. *In re Mesa Air Group, Inc.,* 449 B.R. 441, 443 (Bankr. S.D.N.Y. 2011)(citation omitted); *see also In re CCT Commc'ns Inc.,* No. 07-10210, 2010 WL3386947, at *4 (Bankr. S.D.N.Y. Aug. 24, 2010). The burden of establishing entitlement to fees falls on the applicant. *In re Borders Group, Inc.,* 456 B.R. 195, 203 (Bankr. S.D.N.Y. 2011) (citation omitted); *see also Howard & Zukin Capital v.High River Ltd. P'ship*, No. 05 Civ. 5726 (BSJ), 2007 WL 1217268, at *2 (S.D.N.Y.Apr. 24, 2007) (same).

<u>**Full disgorgement is warranted.**</u>

29. As Amshen did not provide any reasonable services to the Debtor, Amshen must return the retainer to the Debtor.

**Failure to File Fee Application hinders the Assessing value of Services provided**

30. Amshen never filed a fee application or provided the Debtor with an invoice of the work it performed. As a result of this failure, it is uncertain the amount of work that Amshen performed – it certainly does not appear that it provided services (that even if it would have been properly performed) that would warrant the fees that it received. The services that Amshen (negligently) provided to the Debtor appear to be minimal. Amshen never filed a Plan or a

disclosure statement. Moreover, as result of not properly prosecuting the bankruptcy, the United States Trustee filed a Motion to Convert the Chapter 11 Case to Chapter 7, or in the alternative, Motion to Dismiss Case. The Debtor believes that if Amshen files a fee application the Debtor will be able to supplement her objection to Amshen being awarded any fees.

**Failure to properly counsel**

31. Prior to the initial petition the Debtor never met with a counsel rather all of the Debtor's interaction pre-petition was with a paralegal. The paralegal (apparently) failed to ask basic questions or ask her to (properly) fill out an intake form. Proper counseling, including explaining the risks of filing a personal bankruptcy as opposed to a corporate bankruptcy, would have likely prevented the filing of bankruptcy petition by an individual who had not filed her tax returns in the past three years. It is not clear whether that paralegal understood the significance. The only way to determine the level of negligence would be for Amshen to file a fee application and reveal the work that was performed and by whom.

32. Amshen failed to properly counsel the Debtor regarding her obligation to receive Credit Counseling pre-petition. The Debtor took no credit counseling prior to this unauthorized filing or any time thereafter, although the credit counseling briefing certificate filed by Amshen shows that the Debtor completed her credit counseling from Abacus Credit Counseling, on December 19, 2018 at 7:29 a.m. (ECF Doc. 2). If the Debtor was aware of her obligations and understand the import of Amshen's unauthorized filing, she would have strenuously objected to the filing.

33. While the Debtor believes that it would have been able to fund a corporate bankruptcy involving one property, the Debtor is not aware of Amshen's basis of how the Debtor

had the financial ability to finance the complex personal bankruptcy – including retaining an accountant.

**Filing the unauthorized individual petition**

34. Amshen by filing an individual bankruptcy placed all of Ms. Allard's assets into the estate and it included the debts owed to all of her creditors. Rather than informing the Court of the negligent filing and making a motion to withdraw, Amshen filed an amended petition, which it negligently informed the Debtor that she was obligated to sign. If the Inc filed for bankruptcy, only the assets the Inc and its creditors would have been implicated.

**Failure to properly prosecute the case**

35. In the Motion to Convert, the UST pointed to the Debtor's failures including its failure to respond to a motion to vacate the automatic stay concerning one of her properties and to deposit funds in U.S. Trustee's approved accounts.

36. Amshen failed to cure the problems enumerated in the Motion to Convert and to properly respond to the allegation in the Motion to Convert or even respond to 50 East 126th Street Realty, LLC opposition to Debtor's Cross-Motion For An Order Dismissing the Case. Furthermore, Amshen never filed a plan or disclosure statement.

**The Court Should Not Approve Amshen's Retention Nunc Pro Tunc.**

37. To the extent that Amshen requests that its retention be approved nunc pro tunc to the filing date, its request should be denied. "Despite the *per se* bar, courts can retroactively approve retention of a debtor's professionals to an earlier date in limited circumstances by approving the retention *nunc pro tunc*." *In re Bronx 439 E. 135th St. D.T. Bldg. Corp.*, No. 11-15855 (MG), 2014 Bankr. LEXIS 224, at *1 (Bankr. S.D.N.Y. Jan. 17, 2014). The Second Circuit has established a two-prong test for *nunc pro tunc* approval. "*Nunc pro tunc* retention

should only be granted in narrow situations and requires that (i) if the application had been timely, the court would have authorized the appointment, and (ii) the delay in seeking court approval resulted from extraordinary circumstances." *Cushman & Wakefield, Inc. v. Keren Ltd. P'ship* (*In re Keren Ltd. P'ship*), 189 F.3d 86, 87-88 (2d Cir. 1999). "'Simple neglect' on the part of a debtor in failing to take timely action does not constitute the 'extraordinary circumstances' necessary to justify *nunc pro tunc* relief." *In re Aquatic Dev. Group, Inc.*, 352 F.3d 671, 679 (2d Cir. 2003) (quoting *Land v. First Nat'l Bank of Alamosa* (*In re Land*), 943 F.2d 1265, 1268 (10th Cir. 1991)).

38. Factors considered under the "extraordinary circumstances" test include: (i) whether the applicant or some other people bore responsibility for applying for approval (ii) whether the applicant was under time pressure to begin service without approval; (iii) the amount of delay after the applicant learned that initial approval had not been granted; (iv) the extent to which compensation to the applicant will prejudice innocent third parties; (v) and other relevant factors. *In re Keren Ltd. P'ship*, 225 B.R. 303, 307 (S.D.N.Y. 1998), a*ff'd, Cushman & Wakefield, Inc. v. Keren Ltd. P'ship* (*In re Keren Ltd. P'ship*), 189 F.3d 86, 87-88 (2d Cir. 1999)

39. In *In re Stylianou*, No. 01-16121 (AJG), 2010 WL 3719303 at *3 (Bankr. S.D.N.Y. Sept. 15, 2010), found that the second prong of the test for *nunc pro tunc* retention is whether the delay in seeking court approval resulted from "excusable neglect." *Id.* (citing *Hutter*, 215 B.R. at 315;8 *245 Assocs.*, 188 B.R. at 750-51). The Court held that the factors a court considers determining "excusable neglect" include: "(i) the danger of prejudice to the debtor, (ii) the length of the delay, including whether it was within the reasonable control of the movant, and (iii) whether the movant acted in good faith." *Id.*

40. Almost three years have passed since Amshen filed the Amshen Retention and it appears to have taken little or no action to have the Court approve the retention in this time period and it was solely in Amshen's control. The Debtor cannot conceive a good faith basis for Amshen's failure to get the retention approved.

41. For all of these reasons, Debtor respectfully requests this Court that the Court enter an order directing Amshen to disgorge to Mrs. Allard any and all compensation that Amshen has received in this case and any such further relief as the Court deems just and proper.

Dated: Massapequa, New York
April  4th    , 2022

Respectfully submitted,

*Anne Rosenbach, Esq. /s/*
_____
Anne Rosenbach, Esq.
Anne Rosenbach, Esq., PLLC
Attorney for Debtor
Gisele Brouillette Allard